

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **GREGORY L. WILLIAMS** | § | Case No. 13-40856 |
| xxx-xx-0513 | § | |
| 9460 Mimosa Rd., Frisco, TX  75033 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| JO ANN SMIEDT | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 13-4062 |
| | § | |
| GREGORY L. WILLIAMS | § | |
| | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION REGARDING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1]

ON THIS DATE the Court considered the Motion for Summary Judgment (the

"Motion") filed by the Plaintiff, Jo Ann Smiedt ("Plaintiff"), in the above-referenced

adversary proceeding.  No response in opposition was timely filed to the Motion by the

Debtor-Defendant, Gregory L. Williams.[2]

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] The deadline for filing a response to the Plaintiff's summary judgment motion was May 16, 2014.  Defendant filed an untimely response 25 days later on June 10, 2014 — one day prior to the issuance of this opinion — and without any effort to seek leave to file, or for the Court to consider, such an untimely response.  The tardy response was not accompanied by any summary judgment evidence.  However, even if the Court were to consider the last-minute response, it contains nothing that would

The Plaintiff filed her "Complaint for Determination of Dischargeability of Debt" on June 25, 2013, seeking to have the judgment debt owed by the Debtor-Defendant declared nondischargeable under various subsections of 11 U.S.C. §523(a), including that the judgment debt owed by the Defendant is a debt for fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. §523(a)(4).[3]  Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the Plaintiff, and the relevant legal authorities, the Court concludes that the Plaintiff has demonstrated that there is no genuine issue as to any material fact and that she is entitled to judgment as a matter of law that the debt owed to her by the Debtor-Defendant arising from the default judgment issued by the 101st Judicial District Court in and for Dallas County, Texas, is nondischargeable under § 523(a)(4).

## Factual and Procedural Background[4]

The Plaintiff, Jo Ann Smiedt, is a 75-year-old woman whose home suffered severe water damage in 2011.  In seeking a responsible entity to repair the damages inflicted upon her home, the Plaintiff in late 2011 selected Dalworth Restoration to complete the

---

change the decision expressed in this Memorandum.

[3]    This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[4] The facts presented are those which stand uncontested between the parties and are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

repairs.  Dalworth submitted a bid of $78,738.82 to HomeSite Insurance Co., the Plaintiff's home insurance company.[5]

On January 19, 2012, the Plaintiff retained the Defendant, Gregory Williams, as her attorney to help in her dealings with her insurance company and other legal matters pertaining to her home repair.[6]  Rather than assisting the reconstruction project, the Defendant acted contrary to the best interests of his client.  He canceled the Plaintiff's selection of Dalworth as the repairing contractor, even though Dalworth had been approved by the Plaintiff's insurance company.[7]  He convinced the elderly Plaintiff to give him a comprehensive power of attorney and thereby eventually secured control of a significant sum of insurance proceeds from the Plaintiff's insurance company without the Plaintiff's knowledge.  By forging the Plaintiff's signature, the Defendant diverted the insurance proceeds for his own use.[8]  The Plaintiff received no benefit from his activity.  The Defendant's actions to deprive the Plaintiff of the insurance proceeds eventually forced her to seek a home equity loan as a means to finance the necessary repairs to her home.[9]  She never received the insurance proceeds which had been paid to the Defendant.

---

[5] Plaintiff's Ex. B at p. 22.  The page reference is derived from the Plaintiff's comprehensive page numbering system for her collective summary judgment exhibits, constituting 226 pages.

[6] Defendant's Answer at ¶ 3; Plaintiff's Ex. B at p. 168.

[7] Plaintiff's Ex. E at p. 195-96.

[8] *Id*. at p. 199.

[9] *Id.*

As these problems began to create turmoil for the Plaintiff and her family, she discharged the Defendant as her attorney and retained new counsel.[10]  Such new counsel met with the Defendant on Plaintiff's behalf on July 5, 2012.  The Defendant admitted at that time that he possessed at least $19,000 of Plaintiff's funds.[11]  Though the Defendant represented that such funds would be remitted to the Plaintiff by July 9, 2012, the Defendant failed to return any of the Plaintiff's funds.[12]   No accounting or tender of funds has been received by the Plaintiff from the Defendant.  No funds "held for another" are identified on the Defendant's bankruptcy schedules.[13]

On July 12, 2012, the Plaintiff filed a state court lawsuit against the Defendant for breach of fiduciary relationship before the 101st Judicial District Court of Dallas County Texas under case no. DC-12-07724-E (the "State Court Litigation").  The Plaintiff generally alleged in her petition that the Defendant had forged the Plaintiff's signature to obtain the Plaintiff's funds for his own benefit, that the Defendant had unjustly enriched himself through the misappropriation of his client's funds,[14] and had generally abused the

---

[10] Plaintiff's Ex. B at p. 92.

[11] Plaintiff's Ex. A at p. 2.

[12] *Id.* at pp. 2-3.

[13] See response to question #14 in Defendant's *Statement of Financial Affairs* filed on April 5, 2013 [dkt #4] at p. 5.

[14]   The fact of this misappropriation was later confirmed by the District 1 Grievance Committee of the State Bar of Texas in a grievance action against the Defendant.  See Plaintiff's Ex. F.

power of attorney granted to him by the Plaintiff.[15]

Despite proper notice of the state court lawsuit, the Defendant made no appearance in the case. The Plaintiff moved for the entry of a default judgment. On October 26, 2012, the state court conducted an evidentiary hearing on the motion for default judgment at which the Plaintiff appeared with counsel. The state court admitted both documentary and testimonial evidence, and entertained argument from the counsel for the Plaintiff.[16] On October 29, 2012, on the basis of "the evidence plaintiff presented on liability and damages,"[17] the 101st Judicial District Court entered a "Final Default Judgment" in favor of the Plaintiff and against the Defendant in the amount of $526,518.62, consisting of the following elements:

|  |  |
|---|---|
| (1) actual economic damages: | $ 76,236.82 |
| (2) actual physical & mental damages: | $150,000.00 |
| (3) exemplary damages: | $300,000.00 |
| (4) court fees: | $    282.00 |
| Total: | $526,518.62 |

plus post-judgment interest to accrue on the judgment at the rate of 5% per annum (the "State Court Judgment").[18]

A few months later, on April 1, 2013, the Defendant filed a voluntary petition for

---

[15] Plaintiff's Ex. B at p. 5.

[16] Plaintiff's Ex. C at pp. 184-85. See also Plaintiff's Ex. E [transcript of default judgment hearing].

[17] *Id*. at p. 184.

[18] *Id*.

relief under Chapter 7 of the Bankruptcy Code in this Court under Case No. 13-40856. The Plaintiff timely filed her Complaint to Determine Dischargeability of a Debt on June 25, 2013, seeking to except her claim arising from the Judgment from the scope of any discharge granted to the Defendant.  The Plaintiff subsequently filed this Motion for Summary Judgment, asserting that there are no genuine issues of material fact and that, under such uncontested facts, she is entitled to a determination that the debt evidenced by the State Court Judgment is nondischargeable as a debt for fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4).[19]

## Discussion

*Summary Judgment Standard*

The Plaintiff brings her Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing

---

[19]   As stated earlier, the Plaintiff's complaint also contains asserted causes of action under 11 U.S.C. §523(a)(2)(A) and (a)(6) which is not addressed by her Motion for Summary Judgment.  Because of the summary judgment granted herein, the Court need not reach those claims.

the court of the basis for its motion and identifying those portions of the "pleadings,

depositions, answers to interrogatories, and affidavits, if any," which it believes

demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

The moving party asserting that a fact cannot be genuinely disputed must support that

assertion by:

> (A) citing to particular parts of the materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the motion
> only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials do not establish the . . . presence of a genuine
> dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

FED. R. CIV. P. 56(c).

The operation of the summary judgment standard depends upon which party will

bear the burden of persuasion at trial.  If, as in this case, the burden of persuasion is on

the moving party, "that party must support its motion with credible evidence–using any of

the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not

controverted at trial."  *Celotex*, 477 U.S. at 331.  Upon a *prima facie* showing of

entitlement to judgment as a matter of law, the non-movant may not rest upon the mere

allegations or denials in its pleadings, but rather must demonstrate in specific responsive

pleadings the existence of specific facts constituting a genuine issue of material fact for

which a trial is necessary.  *Anderson,* 477 U.S. at 248-49 (*citing* FED. R. CIV. P. 56(e)).  If the nonmoving party cannot muster sufficient evidence to demonstrate a genuine issue of material fact, a trial would be useless.  The substantive law will identify which facts are material.  *Id.*

In this case, the Plaintiff bears the burden to present a *prima facie* case for non-dischargeability.  Thus, the Plaintiff is entitled to a summary judgment only if there exists no genuine issue of material fact as to each essential element under §523(a)(4).  The motion for summary judgment under consideration herein seeks judgment as a matter of law through the application of collateral estoppel.  The Plaintiff claims that the entry of the State Court Judgment by the 101st Judicial District Court in and for Dallas County, Texas, forms the basis for a determination that the underlying judgment debt is non-dischargeable in the Defendant's Chapter 7 bankruptcy case.  Resolving this question requires that the Court first determine the applicability of the doctrine itself.  If collateral estoppel applies, any relevant factual findings (i.e., related to the required elements for non-dischargeability) arising from the process leading to the entry of the State Court Judgment should not be disturbed here.  The Court applies those findings to the required elements for non-dischargeability to ascertain what factual issues, if any, remain.   If collateral estoppel does not apply, the Plaintiff's motion must be wholly denied.

*Standards for Issue Preclusion (Collateral Estoppel).*

"Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that

when an issue of ultimate fact has once been determined by a valid and final judgment,

that issue cannot again be litigated between the same parties in any future lawsuit.'"

*Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).  In other words,

"once an issue is actually and necessarily determined by a court of competent jurisdiction,

that determination is conclusive in subsequent suits based on a different cause of action

involving a party to the prior litigation." *Montana v. U. S.*, 440 U.S. 147, 153 (1979)

(*citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).  "To preclude

parties from contesting matters that they have had a full and fair opportunity to litigate

protects their adversaries from the expense and vexation attending multiple lawsuits,

conserves judicial resources, and fosters reliance on judicial action by minimizing the

possibility of inconsistent decisions." *Id.* at 153-54.

In the bankruptcy dischargeability context, "parties may invoke collateral estoppel

in certain circumstances to bar relitigation of issues relevant to dischargeability" and

satisfy the elements thereof. *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264 (5th Cir. 2005)

(quotation marks omitted).  In other words, when an issue that forms the basis for the

creditor's theory of non-dischargeability has been actually litigated in a prior proceeding,

neither the creditor nor the debtor may relitigate those grounds.  *RecoverEdge, L.P. v.*

*Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995).  While the doctrine of issue preclusion

applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive

jurisdiction to determine whether a debt is dischargeable. *Grogan v. Garner*, 498 U.S.

279, 284 n. 11 (1991).

The inquiry into the preclusive effect of a state court judgment is guided by the full

faith and credit statute, which states that "judicial proceedings . . . shall have the same full

faith and credit in every court within the United States . . . as they have by law or usage in

the courts of such State . . . from which they are taken."  28 U.S.C. §1738 (1994).  Thus,

federal courts look to the principles of issue preclusion utilized by the forum state in

which the prior judgment was entered.  *Schwager v. Fallas (In re Schwager)*, 121 F.3d

177, 181 (5th Cir. 1997).  Because the judgment against the Defendant was entered in a

Texas state court, this Court applies the Texas law of issue preclusion.  *Pancake v.*

*Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra +*

*Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

Collateral estoppel under Texas law prevents the relitigation of identical issues of

law or fact that were actually litigated and were essential to the final judgment in a prior

suit.  *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).  "The

doctrine applies when the party against whom collateral estoppel is asserted had a full and

fair opportunity to litigate the issue in the prior suit."  *Eagle Properties, Ltd. v.*

*Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (*citing Tarter v. Metropolitan Sav. & Loan*

*Ass'n*, 744 S.W. 926, 927 (Tex. 1988).  Specifically, a party is collaterally estopped from

raising an issue under Texas law when: (1) the facts sought to be litigated in the second

case were fully and fairly litigated in the first; (2) those facts were essential to the prior

judgment; and (3) the parties were cast as adversaries in the first case.  *Bonniwell v. Beech Aircraft Corp*., 663 S.W.2d 816, 818 (Tex. 1984); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App.– Dallas 2012, no pet.).  Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties."  *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

In the context of issue preclusion, "issue" and "fact" are interchangeable.  The purpose of the reviewing court is to determine the specific facts brought that were already established through full and fair litigation.  As stated in the Fifth Circuit decision in *Fielder v. King (Matter of King),* 103 F.3d 17 (5th Cir. 1997):

> "Issue preclusion will prevent a bankruptcy court from determining dischargeability issues for itself only if 'the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question . . . and the facts supporting the court's findings are discernible from that court's record.'"], *citing Dennis v. Dennis (Matter of Dennis),* 25 F.3d 274, 278 (5th Cir. 1994) ["Collateral estoppel applies in bankruptcy courts only if, inter alia, the first court has made . . . factual findings on the identical dischargeability issue in question – that is, an issue which encompasses the same prima facie elements as the bankruptcy issue."] (emphasis added).

*Id.* at 19.

While separate and distinct findings of fact by a state trial court are preferable, factual findings need not be explicitly stated nor separately denominated in order for collateral

estoppel principles to apply.  In the event that the state court judgment is conclusory and does not contain detailed facts sufficient as findings to meet the federal test of non-dischargeability, the court may also examine the evidence produced in the state court proceedings to support the judgment and determine whether the record of the state proceedings is sufficient to discern the subsidiary facts supporting the judgment.  *Simpson & Co. v. Shuler (In re Shuler)*, 722 F.2d 1253, 1257-58 (5th Cir. 1984); *Sierra Inv. Assoc. v. Tomlin (In re Tomlin)*, 2005 WL 6440629, at *5 (Bankr. N.D. Tex., Dec. 20, 2005) (*citing Dennis*, 25 F.3d at 278).  In other words, collateral estoppel under Texas law may be properly applied "with realism and rationality" through an examination of the state court proceeding to discern the subsidiary facts "necessarily decided" to reach a judgment in the first proceeding and which are germane to a determination of non-dischargeability under the Bankruptcy Code.  *See, e.g., Fort Worth Hotel, L.P. v. Enserch Corp.*, 977 S.W.2d 746, 753-54 (Tex. App. – Fort Worth 2003, no pet.) [collateral estoppel properly applied to establish negligence of defendant even though factfinder did not make any specific finding that a particular act or omission caused an explosion].  However, it is imperative that the bankruptcy court be able to discern a sufficient factual basis in the state court record to support the conclusions recited in the state court judgment.  *Shuler,* 722 F.2d at 1257-58.  As the party asserting the preclusive effect of the findings arising from the State Court Litigation, the Plaintiff has the burden of proof on all elements of collateral estoppel.

The summary judgment record clearly demonstrates that these two specific parties were adversaries in the State Court Litigation and that the fact of the Defendant's misconduct was essential to the entry of the State Court Judgment.  The sole remaining question is whether those facts were fully and fairly litigated in the first action.  The Court concludes that such facts were fully and fairly litigated.  Even though the Defendant never made a formal appearance in the State Court Litigation, thereby creating a "no-answer" default, the Plaintiff did not rely upon the general recognition that all alleged facts under such circumstances were deemed "admitted" by the Defendant, but rather she pursued an actual evidentiary hearing before the state court.  The Plaintiff was put to her evidentiary burden. The state court heard testimony and admitted documentary evidence.  Upon consideration of that evidence, which the Court characterized on the record as a misappropriation of client funds by the Defendant,[20] the state court awarded actual economic damages of $76,236.82, based upon the misappropriation of funds by the Defendant in the amount of $56,236.82 and an additional $20,000 in consequential damages occasioned by his misconduct.[21]  The Court further awarded emotional distress damages and exemplary damages based upon the record.[22]  Thus, because the default judgment was granted by the state court only after conducting a hearing at which the

---

[20]  Plaintiff's Ex. E at p. 206.

[21]  *Id.* at p. 204.

[22]  *Id.*

Plaintiff met her evidentiary burden, the issues raised and decided at that hearing have been fully and fairly litigated for the purposes of collateral estoppel. *Pancake,* 106 F.3d at 1244 ["We have held under Texas law that where the court enters a default judgment after conducting a hearing or trial at which the plaintiff meets his evidentiary burden, the issues raised therein are considered fully and fairly litigated for collateral estoppel principles."]; *see also Gober,* 100 F.3d at 1205.   Because the trial record from the State Court Litigation sufficiently evidences the subsidiary facts determined and relied upon by the state court to render its judgment for compensatory and exemplary damages in Plaintiff's favor based upon the Defendant's fraud, the Defendant is accordingly collaterally estopped from relitigating those factual determinations that necessarily support the judgment issued in the State Court Litigation.

*Section 523(a)(4): Debt for Fraud or Defalcation While Acting in a Fiduciary Capacity*

11 U.S.C. §523(a)(4) provides that "[a] discharge under 11 U.S.C.§ 727 does not discharge an individual from a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."  The Fifth Circuit has noted "that this discharge exception was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir.1998), *cert. denied,* 526 U.S. 1016 (1999) (internal

quotations omitted).  Whether the actions of an individual were taken in a fiduciary capacity for the purposes of §523(a)(4) is determined by federal law.  *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).  However, "state law is important in determining whether or not a trust obligation exists."  *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

The Fifth Circuit has discussed the concept of a fiduciary under §523(a)(4) in the following terms:

> [T]he concept of fiduciary under §523(a)(4) is narrower than it is under general common law.  Under §523(a)(4), "fiduciary" is limited to instances involving express or technical trusts.  The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong.  Constructive trusts or trusts *ex malificio* thus also fall short of the requirements of §523(a)(4).
> . . . Statutory trusts, by contrast, can satisfy the dictates of §523(a)(4).  It is not enough, however, that a statute purports to create a trust:  A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary."  Rather, to meet the requirements of §523(a)(4), a statutory trust must (1) include a definable res and (2) impose "trust-like" duties.

*Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

However, the trust relationship must exist prior to the creation of, and without reference to, the indebtedness in question. *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338 (5th Cir. 1980).

The Fifth Circuit has recognized that the "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law. *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 393 (Bankr. E.D. Tex. 2009) (citing *LSP Inv. Partnership v. Bennett (In re Bennett)*, 898 F.2d 779, 784-85 (5th Cir.), *cert. denied*, 510 U.S. 1011 (1993)). Federal courts in this context have "not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable." *Shcolnik v. Rapid Settlements, Ltd. (In re Shcolnik)*, 670 F.3d 624, 628 (5th Cir. 2012) (citing *Gupta*, 394 F.3d at 350).

The Defendant admits that he served as the attorney for the Plaintiff.[23] Under Texas law, a fiduciary relationship exists as a matter of law between an attorney and his client. *Meyer v. Cathey,* 167 S.W.3d 327, 330–31 (Tex. 2005) (citing *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 199 (Tex. 2002)); *Fleming v. Curry*, 412 S.W.3d 723, 731 (Tex. App. – Houston [14th Dist.]  2013, pet. denied). "The term 'fiduciary' refers to integrity and fidelity; thus, the attorney-client relationship is one of the most abundant

---

[23]  *See supra* note 6.

good faith, requiring absolute perfect candor, openness and honesty, and the absence of any concealment or deception." *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.,* 284 S.W.3d 416, 428-29 (Tex. App. – Austin 2009, no pet.) (citing *Goffney v. Rabson,* 56 S.W.3d 186, 193 (Tex. App.– Houston [14th Dist.] 2001, pet. denied)); *Combs v. Gent*, 181 S.W.3d 378, 384 (Tex. App. – Dallas 2005, no pet.).  "As a fiduciary, an attorney is obligated to render a full and fair disclosure of the facts material to the client's representation." *Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988);  see also *Milbank v. Holmes (In re TOCFHBI, Inc.),* 413 B.R. 523, 532 (Bankr. N.D. Tex. 2009).  "Breach of that duty is tantamount to concealment."  *Floyd v. Hefner*, 556 F. Supp. 2d 617, 661 (S.D. Tex. 2008) (*citing Willis*, 760 S.W.2d at 645).

"A breach of fiduciary duty occurs when an attorney benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interests to his own, retaining the client's funds, using the client's confidences improperly, taking advantage of the client's trust, engaging in self-dealing, or making misrepresentations." *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex. App. – Fort Worth 2002, pet. denied) (citing *Goffney,* 56 S.W.3d at 193).  This is more than just legal malpractice.  *Trousdale v. Henry,* 261 S.W.3d 221, 227 (Tex. App. – Houston [14th Dist.] 2008, pet. denied) (citing *Goffney,* 56 S.W.3d at 193–94) ["A claim for breach of fiduciary duty by an attorney "requires allegations of self-dealing, deception, or misrepresentations that go beyond the mere negligence allegations in a malpractice

action."].  This is misconduct that affirmatively betrays the "integrity and fidelity" owed

by an attorney to his client.  *Kimleco Petroleum,* 91 S.W.3d at 923; *Milbank,* 413 B.R. at

532.  ["Boiling the matter down to its essence, the focus of a breach of fiduciary duty

claim may involve outright concealment somehow of a lawyer, or may involve an

attorney obtaining an improper benefit from representing a client; whereas, in contrast,

the focus of a legal malpractice claim is simply whether the attorney adequately

represented the client."].

As to the remaining element of nondischargeability under §523(a)(4), there is a

sufficient factual basis in the state court record to support a conclusion that the Defendant

committed fraud or defalcation while acting in his fiduciary capacity as the Plaintiff's

attorney.   The Court specifically found, on the basis of the evidence presented, that

$56,236.82 was "appropriated by Mr. Williams on Ms. Smiedt's behalf and either

retained by him or expended by him in a manner not for her benefit."[24]  That is a specific

finding that the Defendant engaged in self-dealing by improperly retaining his client's

funds and thereby obtained an improper benefit from representing a client — an act that

clearly constitutes a breach of fiduciary duty under Texas law.  *See Kimleco Petroleum,*

91 S.W.3d at 923.  The record clearly supports the finding that the Defendant engaged in

concealment and deception regarding the improperly-retained funds to the detriment of

his client.  The record clearly supports the finding that the Defendant wholly failed to

---

[24]  Plaintiff's Ex. E at p. 204.

"render a full and fair disclosure of facts material to the client's representation." *See Combs*, 181 S.W.3d at 384.

Though the state court did not make distinct factual findings utilizing the term "fraud," it is sufficiently clear from the record that the state court found that the Defendant had perpetrated a fraud upon his client. If it were otherwise, the state court could not have authorized, as it clearly did, the recovery of exemplary damages by the Plaintiff for the Defendant's misconduct. Indeed, not only did the state court find that the assessment of exemplary damages against the Defendant was appropriate and authorized under the tendered evidence of fraud, it undoubtedly believed that the Plaintiff had proven the existence of that fraud by clear and convincing evidence – as that is the requisite evidentiary standard for recovery of exemplary damages resulting from fraud. *Citizens Nat'l Bank v. Allen Rae Invs*., 142 S.W.3d 459, 484 (Tex. App. – Fort Worth 2004, no pet.); 2A TEX. CIV. PRAC. & REM. CODE ANN. §41.003 (Vernon Supp. 2013); *see also Fid. Nat. Title Ins. Co. v. Heart of Texas Title Co.*, 2000 WL 13037, at *3 (Tex. App. – Austin, Jan. 6, 2000, pet. denied); *Hawthorne v. Guenther,* 917 S.W.2d 924, 936 (Tex. App. – Beaumont 1996, writ denied); *NRC, Inc. v. Huddleston,* 886 S.W.2d 526, 533 (Tex.App. – Austin 1994, no writ) and *Cheek v. Humphreys,* 800 S.W.2d 596, 599 (Tex. App. – Houston [14th Dist.] 1990, writ denied) [all finding that exemplary damages are proper where a fiduciary has engaged in fraud or self-dealing]. This assessment clearly indicates the existence of a fraud claim, rather than mere professional negligence

damages based upon the quality of the Defendant's legal services which could not serve as a predicate for the imposition of exemplary damages.  2A TEX. CIV. PRAC. & REM. CODE ANN. §41.003(b) (Vernon Supp. 2013).

Even without the necessity of a fraud finding, the state court's findings regarding the Defendant's self-dealing and wrongful diversion of the Plaintiff's funds constitutes a defalcation for the purposes of §523(a)(4).  Under the recent decision of the United States Supreme Court in *Bullock v. BankChampaign, N.A.*, ___U.S.___, 133 S.Ct. 1754 (2013), in which it rejected an objective recklessness standard in favor of a heightened culpability standard for defalcation under §523(a)(4),  the Supreme Court declared that such defalcation "includes a culpable state of mind requirement" involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id*. at 1757.   According to *Bullock*, "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong." *Id*. at 1759.  Such an intentional wrong encompasses not only conduct which the fiduciary knows is improper, but it also encompasses reckless conduct,[25] such as when a fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk" that his conduct will result in a breach of fiduciary duty. *Id*.

---

[25]  The Supreme Court described such reckless conduct as "the kind set forth in the Model Penal Code §2.02(2)(c)" and tracks that necessary to prove scienter in federal securities cases.  Scienter, in the context of securities fraud, is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976).  *Bullock* therefore seeks to eliminate from the scope of §523(a)(4) the type of recklessness arising as a consequence of mere negligence or inadvertence.

The intentional retention and diversion of client funds by an attorney constituting a breach of fiduciary duty under Texas law clearly meets the definition of defalcation expressed in *Bullock*.  As previously stated, such a breach goes beyond mere professional negligence and instead implicates the "integrity and fidelity" of an attorney.  *See Beck*, 284 S.W.3d at 429.  Subordinating a client's interests to his own, retaining the client's money to the client's detriment, and engaging in self-dealing with client funds do not occur through mere negligence.  The duty of an attorney with regard to client funds is well-established.  "Throughout the history of our profession, a lawyer has been required to treat the property of a client in accordance with the highest standards of accountability." ROBERT P. SCHUWERK & JOHN F. SUTTON, JR., *A Guide to the Texas Disciplinary Rules of Professional Conduct,* 27A HOUS. L.REV. 1, 199–200 (1990), cited in *Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 680 (Tex. App. – San Antonio 1998, no pet.).  "An attorney has a duty to make prompt delivery to a client of all funds in the possession of the attorney which the client is entitled to, and a breach of that duty by failure to remit client funds gives rise to a cause of action sounding in tort." *Hughes v. Wells* (*In re Wells*), 2006 WL 6508180, at *24 (Bankr. N.D. Tex., Mar. 9, 2006), citing *Avila v. Havana Painting Co.,* 761 S.W.2d 398 (Tex. App.– Houston [14th Dist.] 1988, writ denied).  The summary judgment evidence tendered to this Court demonstrates that this course of conduct by the Defendant was not a product of mere inadvertence or negligence.  Upon his review of the evidence, the state court judge clearly

believed that the Defendant had engaged in a willful failure to deliver funds to his client, that he knew of the improper nature of his behavior and possessed a "culpable state of mind" with regard to his improper actions, all of which led to the imposition of damages upon his client.  The assessment of exemplary damages against the Defendant by the state court buttresses that conclusion.  As a result of the Defendant's actual knowledge of the improper nature of his conduct toward the Plaintiff, the actual damages evidenced by the State Court Judgment are rendered nondischargeable under §523(a)(4) as arising from fraud or defalcations committed by the Defendant while acting in a fiduciary capacity.[26]

The United States Supreme Court has stated that "[o]nce it is established that specific money or property has been obtained by fraud, . . . 'any debt' arising therefrom is excepted from discharge." *Cohen v. de la Cruz,* 523 U.S. 213, 218 (1998); *see also Snook v. Popiel (In re Snook)*, 168 Fed. App'x. 577, 578 (5th Cir. 2006); *S&S Food Corp. v. Sherali (In re Sharali)*, 490 B.R. 104, 125 (Bankr. N.D. Tex. 2013).  Though the facts in *Cohen* specifically addressed a liability rendered nondischargeable under the actual fraud prong of §523(a)(2)(A), its rationale to prevent a discharge of all liability arising from circumstances that render a debt nondischargeable under §523(a) has been extended to cases in which the primary debt is rendered nondischargeable due to fraud or defalcation while acting in a fiduciary capacity.  *Drexel Highlander Ltd. P'ship v. Edelman (In re*

---

[26]  This debt could likely be declared to be nondischargeable as a debt arising from an embezzlement under §523(a)(4), but such cause of action was not asserted under the Plaintiff's complaint.

*Edelman)*, 2014 WL 1796217, at *43 (Bankr. N.D. Tex., May 6, 2014); *Conte v. Woomer (In re Woomer),* 2013 WL 5536072, at *18 (Bankr. E.D. Tex., Oct. 7, 2013); *Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 43 (Bankr. E.D.N.Y. 2011); *In re Palombo*, 456 B.R. 48, 64-65 (Bankr. C.D. Cal. 2011).  Thus, in light of the jurisprudence that §523(a) should be properly construed to bar the discharge of all liability arising from the categories of misconduct that render a debt nondischargeable, thereby insuring "that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interest in a complete fresh start," *Cohen*, 523 U.S. at 222, the Court concludes that the damages awarded to the Plaintiff in the State Court Judgment for mental anguish and emotional distress,[27] as well as the state court's award of exemplary damages to the Plaintiff, based upon the Defendant's misconduct that constitutes a fraud and/or defalcation while acting in a fiduciary capacity, must also be rendered nondischargeable under §523(a)(4).

---

[27]  "Mental anguish is also compensable as the foreseeable result of a breach of duty arising out of certain special relationships." *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997).  Though economic losses caused only by an attorney's *negligence* will not support a recovery of mental anguish, *Douglas v. Delp*, 987 S.W.2d 879, 885 (Tex. 1999), the Court is convinced that a breach of the fiduciary duty imposed as a matter of law because of the special relationship between an attorney and his client falls within the *Likes* "special relationship" analysis, thereby authorizing a recovery of mental anguish arising from an attorney' breach of fiduciary duty.  See, e.g., *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 266–67 (Tex. App. – Corpus Christi 1991, writ denied) [holding client could recover mental anguish damages for attorney's breach of duty of confidentiality].  *See* Plaintiff's Ex. E at p. 197-98.

**Conclusion**

Accordingly, upon due consideration of the pleadings, the proper summary judgment evidence submitted by the Plaintiff, the relevant legal authorities and for the reasons set forth herein, the Court concludes that there is no genuine issue as to any material fact and that the Plaintiff, Jo Ann Smiedt, is entitled to summary judgment that the debt owed to her by the Debtor-Defendant, Gregory L. Williams, arising from the State Court Judgment is non-dischargeable under the provisions of 11 U.S.C. §523(a)(4). Court costs of $293.00 incurred in this adversary proceeding shall be awarded to the Plaintiff and assessed against the Debtor-Defendant.  An appropriate order and a judgment will be entered which are consistent with this opinion.

Signed on 06/12/2014

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE